Good morning. May it please the court, I'm Dan Wilson from Kalispell, Montana. I represent the petitioner and the appellant in this matter, Justin Gamba. I was appointed and represented him at the hearing on his 2255 motion and I wrote the briefs on this appeal. There are two issues that I'd like to address in addition to fielding any questions from the panel. On one issue that was dispositive of the 2255 motion, Mr. Gamba and the district court are in agreement. The district court held that Mr. Gamba did not consent to the magistrate judge presiding over closing arguments. The United States in this matter maintains that his consent may be implied if I may characterize the government's argument in that way. Is there a Ninth Circuit case law that requires the individual defendant personally to approve a magistrate judge presiding over closing arguments? I'm not aware of any such authority from the Ninth Circuit, Your Honor. However, I distinguish what I believe is the seminal case on this point, namely United States v. Perez, the Supreme Court's decision from 1991. In that instance, the magistrate judge presided over voir dire in a felony criminal trial after having twice asked for the consent of the defendant, both to the defendant's counsel and to the defendant when they were both present in court. And in that case, the defendant's counsel agreed to and consented to the magistrate judge's conducting the voir dire. However, in this instance, as the district court found, Mr. Gamba was presented with a fait accompli. And I would submit to the court that there's a material and substantial difference from having been asked to consent to the magistrate judge versus being told that the magistrate judge would preside. The issue of whether the magistrate judge... Didn't his counsel consent, though? Don't you consent? Don't you agree that his counsel consented to this? I agree completely. And is it not clear under our case of Wilson v. Gray that counsel has been permitted to waive a client's right to cross-examine or confrontation as a matter of trial strategy or tactics? Isn't that sufficient to allow us to treat the consent of counsel as being sufficient to provide a jurisdictional basis for the magistrate to hear the closing arguments? I don't believe it does, Your Honor. And here's why. The nature of the consent that's required is not simply one of sort of common law constitutional jurisprudence as the waiver of a constitutional right would be. This falls under the separate category of consent that's specifically mandated by the Magistrate Act and the Supreme Court's interpretation of that act. And in this case, when Mr. Gamba's trial counsel consented to the magistrate judge's presiding over a closing argument, that discussion occurred in chambers when Mr. Gamba wasn't present while they were settling jury instructions. And when the district court inquired of Gamba's trial counsel, will Mr. Gamba object, the trial counsel's answer was, he won't care. Subsequent to that, at the hearing on the 2255 motion, Mr. Gamba's trial counsel testified that between the time of settling instructions and when the jury was reassembled to hear instructions on the law and closing arguments, there was a discussion between the two of them. However, to characterize it, a discussion, I think, is taking that term very broadly. What Mr. Cheehy said was that I informed him that Magistrate Judge Erickson would preside over closing arguments. Mr. Cheehy did not recall having discussed with Mr. Gamba that Mr. Gamba had a right to object. And then minutes later, when Chief Judge Malloy announced to the assembled jury that Magistrate Judge Erickson would preside during closing arguments, it was more or less informing the parties that this would occur. Mr. Gamba didn't participate at any point. And as I said earlier, I think what differentiates this case from Peretz primarily is that the question whether Magistrate Judge Erickson would preside wasn't asked when Mr. Gamba was present. The topic was never broached with him in a fashion that would lead any reasonable person to believe he had a right to object. You're basically asking us to adopt the Eleventh Circuit rule? Yes, Your Honor, in the Mayer case that was cited by the district court. So the Supreme Court said that in Peretz that the magistrate judge can preside over voir dire. Here we're talking about closing argument. Do you see a substantive difference in terms of the constitutional gravity of each? I don't, Your Honor. I don't see a difference in the gravity. You're really talking about here a defendant. I assume your defendant has no legal training at all, right? He does not. Okay, so what you're asking us to say is that even though his counsel, presumably well trained in the law, consented to the magistrate judge presiding over the closing argument because the district court judge had to pick up his wife in the hospital, the magistrate judge said nothing, made no ruling. Do you agree with that? I do. And what you're asking us to say is you want us to adopt a rule whereby in order for a magistrate judge to preside over closing argument, not only does the counsel have to preside, but the defendant who knows nothing about criminal law, has no idea what a closing argument probably is, must personally consent in order to give jurisdiction. Is that what you're asking us to do? I am. And I think that when it comes to whether or not Mr. Gamba is trained in the law, whether that should make a difference in the analysis, I don't. Defendants appear often pro se before magistrates in matters where they have a right to a trial before an Article III judge, and the question is put to them, do you consent or not? And the consent itself is the key, an informed consent I believe, but the training level of the defendant in the area of law isn't so much. I ask that only to point out that to some degree this is kind of a catch the constable issue here. What constitutional benefit does the defendant derive from our adopting such a rule? It went back to, we sent this back to the district court. How is it going to help him in any way? He'll get an Article III judge instead of an Article I judge presumably. I suppose the same way that it helped the defendant in Gomez. In that case, the seminal case, the Supreme Court determined that even though there was no assignment of error to anything that the magistrate judge did during and the defendant could point to no prejudice from anything the magistrate judge did, nevertheless the error was having a judge preside that wasn't authorized by the magistrate's act to do so. And this highlights I think what is a very important difference that the district court and I have in the approach to the analysis on whether this is a critical stage of the proceeding, namely closing argument, versus a subsidiary matter. And that is even under the test announced by the Ninth Circuit in Gomez-Lepe, the test requires a balancing of the rights at stake in the given proceeding. And in this matter, the district court's order was very well crafted, but it ignored entirely this question of what rights are at stake in a closing argument. And although the district court honed in on the fact that Magistrate Judge Erickson wasn't called upon to make a ruling and there could be no assignment of error to any ruling that he made, therefore, that this was a subsidiary matter. But I would submit to the court that a judge is working just as hard when he or she is listening as when he or she is ruling. But, counsel, I thought we already discussed the fact that the Supreme Court has said that the magistrate judgment here at Wadeer, you agreed that the closing argument in Wadeer are roughly proportionately and constitutionally important. Isn't the real question here, and perhaps the only question, is it lawful for a legal counsel or Mr. Gamba to consent to the magistrate presiding? Isn't that really the only issue that's before us? I think that's the critical issue, yes. If, like has happened in other cases, the counsel has knowingly waived this right on behalf of his client, then there's clearly jurisdiction for the magistrate to hear it if that's what's decided. If, on the other hand, we adopt the Eleventh Circuit rule, then it requires the consent of both the counsel and the defendant. Isn't that the issue? I think so. And I think there's even some room in between the two rules that Your Honor just described. For example, in the Peretz case, there's no indication that the defendant himself uttered the words, I consent. But I believe what the Supreme Court was saying, that under the circumstances, because he was present twice, when it was explained to him, he had the right to object, and his counsel consented twice in his presence that his consent could be implied. And in this case, I don't think you can even imply the consent. Okay, I think that you're over time, but then I'll give you a minute for rebuttal, and we'll hear from the government. Thank you. Good morning, Your Honors. Can you hear me okay? We can. Good morning. Can you hear us? I can. Thank you. My name is Josh Van Wettering. I'm Assistant United States Attorney in Missoula, Montana, representing the government in this case. And I would like to focus my argument on, and I think more precisely what the issue is, because this case comes to this court on a 2255 motion, the issue is whether or not Mr. Gambit's counsel was ineffective as a matter of law. And that, of course, requires two things to happen. One, for his performance to have fallen below a wide range of competent conduct, and also for Mr. Gambit to have suffered prejudice of a level that is sufficient to undermine confidence in the outcome of the case. I'm not sure why the court did that. Can you explain why it has to be ineffective assistance? It's if it's plain error that the court itself should have recognized it was the court that created the error, the alleged error, and the proceeding is itself subject to attack, is it not? The proceeding certainly is, Your Honor, in terms of analyzing whether or not Mr. Sheehy, Mr. Gambit's lawyer in the first place, was effective or not. I think that additional standard... Well, if there's plain error, in other words, if the law is as it is in the Ninth Circuit, excuse me, the Eleventh Circuit, the magistrate judge was acting without authority. So that would, by definition, be ineffective assistance. And then the question is, you'd have to say that there was no prejudice, but I don't see it gets you anywhere to reframe it as ineffective assistance. Isn't the issue, as we've been talking, whether or not under Peretz, there has to be not just consent by the lawyer as the authorized representative of the defendant, but the defendant himself had to be informed and consent. That's the issue. That is certainly the underlying issue, Your Honor, and I would suggest to the court that even on that issue the United States prevails in this case. The case of Gomez-Lefe, I think, is controlling in this circuit and recognizes very clearly that whether or not a trial is at its critical stage or is engaged in a subsidiary matter is an issue that varies in case to case depending on what's going on. The Gomez-Lefe case establishes a test that, as Mr. Wilson notes, requires a balancing of the defendant's rights, but also more than that. It requires balancing the discretion exercise, the degree of responsibility conferred, and the nature of the interactions between the judge and the jury. In this case, I think it's – Can we just address the closing argument then? I mean, clearly the magistrate judge conducting voir dire is to the extent that the magistrate judge is indeed doing the voir dire. This is typical in most – I don't know if it's – is that true in Montana? It is not, Your Honor. So the attorney – so in that situation then, in Montana, the magistrate judge would just be observing and presiding over counsel's conduct in voir dire-ing the jury? No, Your Honor. In Montana, the Article III judge conducts voir dire. Normally, the magistrate judge does not participate in a trial at all. Okay, that's what I thought. So – but in – if with consent, then, in the voir dire in Montana, the magistrate judge would be conducting the voir dire, correct? Correct. Okay, so now we move to the closing argument. And in the closing argument phase, you are arguing and the defendant argues – objects and says that question – that argument is a violation of the Sixth Amendment because it's, in effect, calling into question the defendant's failure to testify. Or it's – the argument is exceeding what's in evidence. How is the magistrate judge supposed to be able to rule on that? Well, the magistrate judge, I think, Your Honor, can rule on that if Mr. Gamba has consented. And I would suggest that in this case, he did. No, I'm saying if he doesn't, we're talking about critical stage of the – I thought you were talking about critical stage of the proceeding and that all that this magistrate judge is doing is exercising subsidiary powers that comes under the additional duties. But I'm trying to understand. Are you trying to say that closing argument is less of a critical stage than voir dire? I'm not suggesting that, Your Honor. But I'm suggesting that in this case, it's not typically less than voir dire. But I think that what the Gomez-Lepe case instructs is that how critical a stage is depends on what's happening in that stage. And that's blurred. I know. But you're not suggesting that – well, maybe you are suggesting. You're saying because it turned out, in fact, in this case, to be very modest, that it is not a critical stage in this case? It's not a critical stage categorically. I'm suggesting it's not a critical stage in this case, Your Honor. Certainly, in a categorical general sense, closing argument is just as critical a stage as voir dire is. But I think the Gomez-Lepe case recognizes that how critical a stage is depends on what's actually happening. If this were a case where there had been an objection in closing argument, I would have a much more difficult argument than I have right now. But, in fact, what happened in this case is the magistrate judge was not called upon to do anything substantive. And that goes probably most strongly to the prejudice prong of the Strickland case, where the defendant has to show that but for counsel's unprofessional error, there would have been a reasonable likelihood that there was a different outcome. And I don't think the defendant can show any part of the Strickland – that he's passed any part of the Strickland test. I don't think he can show that his counsel really made an error because, in fact, there is some dispute, as we're recognizing today, about what the cases really mean in terms of consent, what level of consent has to be given, and what exactly – how significant it is depending on what happens in court. But perhaps the most important – Counsel, you've not mentioned the waiver issue. I want to just be sure we dispose of that. It appears that the reason the claim of ineffective counsel is being made here is because no objection was made to the magistrate judge at the trial level and, therefore, could not be raised on appeal. Is that your understanding? Are you there? We lost him. Was it something I said? It was the word waiver that drove him over the edge. He was put off. He's coming back. Looks like it. Oh, there you are. Can you hear us? Okay, now – I can't hear you. Could you say something again? Can you hear me now? Now we can. Before we were so rudely interrupted electronically here, I was asking you about the issue of waiver. And I mentioned that my understanding is that the counsel did not object to the magistrate judge presiding over the closing arguments at the trial itself. Is that your understanding? Counsel did not object. That's correct, Your Honor. And so it appears that the reason the claim of effective counsel was made in the first place was to have an appealable issue in effect. Is that your understanding? Yes. Is it the government's position under Strickland that even if we were to find plain error because the defendant had not personally consented to the magistrate's presiding over the closing argument, that sending it back to an Article III judge would not necessarily bring a different result? And under Strickland, you've got to show some real benefit, and therefore there's no claim of ineffective counsel no matter what happens here? That's exactly right, Your Honor. The defendant simply cannot succeed under Strickland because he has to show there would have been some difference in the case. The ineffective assistance counsel frequently turns on an argument or almost speculation about what might have happened. And the Strickland case is clear that the defendant must show there's a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The case also specifies that it is not enough for the defendant to show that the errors have some conceivable effect on the outcome of the proceeding. Here, there isn't even a conceivable effect that might have affected the outcome. If the final argument of counsel is a critical stage of the trial, and we adopt your view that we look ad hoc at each one of these cases to see whether something prejudicial might have happened, and since it didn't happen, it's no harm, no foul, then we're going to have ad hoc reexaminations of every one of these ambiguous cases when counsel said it's okay but the client was never asked. Now, if it's plain error, the only way to stop plain error is to say go back and do it right. Otherwise, we'll be spending as much time on this sort of thing as we're spending on immigration today. I would – you're correct, Your Honor, that if it is plain error, then that would be the result. I don't think the court has to resolve a case on plain error, okay? I don't think it is ultimately plain error because defense and substantial rights aren't affected because – The 11th Circuit thought it was. The 11th Circuit did. That's true. But I think that Goldman left a case in this circuit because of the variation. I recognize that's a pretty well-reasoned opinion, and it had expressed the views of all three of the judges. One of them dissented from giving it another chance, but that – And I would suggest – Well, if it's plain error and it's a critical stage, what alternative do we have other than, as you said – Well, I would use the Strickland analysis to see whether there was any real or potential harm. And I would suggest, Your Honor, that the final prong of the plain error analysis, whether or not the error seriously affects the fairness, integrity, or public reputation of the judicial proceeding, is very much like the prejudice prong of the Strickland test, and the defendant fails on either one of those. In fact, there was nothing that happened at this stage of the proceeding to undermine confidence in the proceeding at all. I made my closing argument. Defense counsel made his closing argument. There were no objections. That would have been exactly the same result regardless of who was sitting on the bench. There's simply no reason to believe that there was prejudice under Strickland or that there was an error that affects the integrity or public reputation of the judicial proceeding under the plain error test. Okay. So for that reason, I take it. We know you would like us to affirm the judgment. You don't have to say that. We're running a little behind schedule now, so I'm going to have to ask counsel to take his minute of rebuttal. Thank you. Thank you, Your Honor. Thank you. If the plain error standard were applied in the manner that the government suggests, then the Peretz case would never have gotten to the Supreme Court, because in that case the defendant's counsel did consent. Nevertheless, it was reviewed. Counsel, under Strickland, who has the burden to show that a reversal would bring an entirely different result? I believe that under the third, I believe what needs to be shown is that the result would have been different in that an Article III judge would have presided. But isn't the ultimate result to the defendant, but rather the procedural difference you're talking about? The procedural difference is the harm, though, because either under a plain error analysis where we're asking, does this error affect the integrity of the judicial system? And I submit that failure to have an Article III judge when one is mandated is just such a harm that deserves reversal or vacation of the conviction. And with respect to the ineffective assistance of counsel, I believe that how I frame the issue in the brief and what's critical for the panel to decide is, was it effective for Mr. Cheehy to have not appealed this magistrate-judge issue? And in the case of Smith v. Robbins, the Supreme Court case I cited in my brief, the Supreme Court held there that where appellate counsel fails to discover an issue that is strongly harmful. We have your briefs on that. Thank you. We have the point. Counsel, we appreciate the argument. It's a very interesting issue and the case argues. Thank you, Your Honor. Thank you. The next case on calendar is United States v. Godby, and that has been submitted on the briefs.
judges: Goodwin, Fihser, Smith